IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALAN RICHARD FERGER,

    Petitioner,                    No. CIV-S-10-3430 WBS CKD P

    vs.

ROBERT H. TRIMBLE,

    Respondent.[1]                FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a California prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254. He is serving a sentence of 25 years-to-life under California's "Three Strikes" law. He challenges his conviction for possession of a firearm by a felon.

I. Standard For Habeas Relief

        An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any

---

[1] Robert H. Trimble, the warden at petitioner's current place of incarceration, is hereby substituted as the respondent in this action. See Fed. R. Civ. P. 25(d); Brittingham v. United States, 982 F.2d 378, 379 (9th Cir. 1992).

1

claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[2]  It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

/////

/////

---

[2] Title 28 U.S.C. § 2254(d) establishes a precondition to federal habeas relief, not grounds for entitlement to habeas relief.  Fry v. Pliler, 551 U.S. 112, 119 (2007).

2

A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

"[W]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011).  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  Id. at 785.

Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  As long as "'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief is precluded.  Harrington, 131 S. Ct. 786.

If the state court does not reach the merits of a particular claim, de novo review applies.  Lewis v. Mayle, 391 F.3d 989, 996 (9th Cir. 2004).

II. Analysis

Petitioner's only claim concerns the trial court's failure to instruct jurors regarding the defense of momentary possession of a firearm for purposes of disposal.  The momentary possession instruction was given at petitioner's first trial, which ended in a hung jury.

Generally speaking, a defendant has a Constitutional right to have the jury instructed on his theory of defense as long as the theory is legally sound and evidence presented makes it applicable.  Byrd v. Lewis, 566 F.3d 855, 860 (9th Cir. 2009).  However, deprivation of that right will only result in habeas relief if the instructional error had substantial and injurious effect or influence in determining the jury's verdict.  Id.  A "substantial and injurious effect"

/////

means a "reasonable probability" that the jury would have arrived at a different verdict had the instruction been given. Id.

On direct appeal, the California Court of Appeal summarized the facts related to petitioner's claim as follows:

> In 2004, the Federal Bureau of Investigation (FBI) began investigating a Sacramento mosque for possible criminal activity. The investigation's targets were Sifudeen Mateen (also Steve Hernandez), the leader of the mosque, and Richard Pulley. FBI Agent Vincent George went undercover and began attending the mosque as Malik McGee, a used car dealer. During that time, he sold cars to both Hernandez and Pulley.
>
> George became acquainted with defendant, whom he knew as Amen. George recorded all of his conversations with defendant. He also wore a transmitter which allowed other agents to hear his conversations. There were usually at least six other agents to hear his conversations. There were usually at least six other agents in the area when George was at the mosque.
>
> On April 30, 2004, defendant asked George if he knew anyone who was looking for a firearm. George said he was interested in one. Defendant told him he had a .380 to sell.[3] He had another weapon, a .22, but that was for someone else. He told George he had to go home to get the .380. George said he had to make a run to get some money. They agreed to meet at the furniture warehouse where defendant worked. Defendant told George the gun had cost him $350 and he would sell it to George for the same amount.
>
> About two-and-a-half hours later, the two met at the furniture warehouse, which was located near the mosque. Defendant said that others in the warehouse had told him the "feds" were in the area. George asked him if he no longer wanted to do the deal. Defendant said he would still go forward.
>
> George went out to his car to get the money. When he returned, defendant had a backpack. He unzipped the backpack and took out the contents: a box containing the .380, a test fire target, a cleaning kit, and some rounds. Defendant explained everything that was in the backpack. He handled the firearm for George to see. After he explained everything, he put the gun back in the box, and put it and the rest of the materials back inside the backpack.

/////

---

[3] George stated a .380 is a semi-automatic handgun that takes a magazine.

4

1   George gave defendant $360.  With defendant's permission, George used the backpack to take the gun and other materials to his car.  He then returned with the empty backpack.

Defendant attempted to sell George more guns afterward.  A few days after selling the .380, defendant offered to sell George two Glock semi-automatic pistols.  They agreed on a price of $1,600.  The deal, however, fell through.  In November 2004, defendant offered to sell George a semi-automatic assault rifle.  They agreed on a price of $800.  That sale also did not occur.

Defendant was not arrested until August 2005 so that the investigation at the mosque could continue.

*Defense Case*

Defendant testified on his own behalf.  He had suspected illegal activity was occurring at the mosque, but he was not privy to it or to those in charge of the mosque.  When Agent George showed up as Malik McGee, defendant viewed him as an outsider.  Later, defendant was informed by others to avoid George for fear he might have been a law enforcement officer.

Defendant claimed George was the first person to bring up the subject of guns.  George actually raised the subject on at least two separate occasions before April 30, 2004.  At those times, defendant did not tell George anything about obtaining guns.

On a couple of occasions, defendant saw firearms at the furniture warehouse.  When asked if it occurred to him at that time what would happen if police found him, a felon, in a warehouse with guns, defendant responded, "yeah, and I'm going to prison for a long time."

On April 29, 2004, one of defendant's coworkers, Abdul, told defendant he needed to sell some guns to raise some cash, and he asked if defendant knew anyone who wanted to buy guns.  Defendant thought of at least two people who might be interested, both of whom he suspected of being involved with law enforcement.  One of them was George.  Abdul gave defendant a gun, which defendant put in his backpack.  He then put the backpack inside a buffet in the warehouse.

The next day, April 30, defendant spoke with the first person about the gun.  After a later meeting with the first person fell through, defendant saw George and decided to try to sell the gun to him.  Assuming George was a law enforcement officer, defendant believed selling the gun to George would result in officers shutting down the illegal activity occurring at the mosque and warehouse and perhaps helping defendant get some money and get out of state.

5

> Defendant told George he had the gun that he would sell to him for cost. Defendant said the gun was at his house because if he was arrested there it would not involve the mosque.
>
> When he met George back at the warehouse, defendant retrieved his backpack with the gun inside. He placed the backpack on a mattress where the two were sitting. He opened up the backpack, but he did not touch the gun. He described the gun's features to George, and sold him the gun. He thought he was going to be arrested right then.
>
> Defendant admitted he was convicted of felony assault in 1999 and robbery in 1994, that both crimes involved guns, and that he knew he was not permitted to possess guns.

Op. at 2-5.

According to the Court of Appeal, momentary or transitory possession of a firearm for purposes of disposal is a defense to possession of a firearm by a felon. Id. at 6. The Court described the defense as follows:

> Momentary or transitory possession occurs upon a "fleeting, de minimis possession [of contraband] and a reflexive act of abandonment. . . . [T]he defense of transitory possession . . . applies only to momentary or transitory possession of contraband for the purpose of disposal[.]" (*People v. Martin* (2001) 25 Cal.4th 1180, 1191 (*Martin*), citations omitted [no error in refusing requests for momentary possession instruction where defendant possessed narcotics for four hours prior to police arriving on the scene and did nothing to dispose of the drugs for 40 minutes after they arrived until the police discovered them in his possession during a search.].) [Footnote omitted.]

Id.

The California Court of Appeal found that failure to give the momentary or transitory possession instruction was not error since there was no substantial evidence supporting such a defense. Id. at 6-7. The court noted in particular that petitioner admitted that he had possessed the gun that he sold to Agent George for about a day, and found this could not amount to "fleeting" or "de minimis" possession. The Court of Appeal's findings are not contrary to, nor do they involve an unreasonable application of clearly established Supreme Court authority.

/////

1 Also, the findings are not based upon an unreasonable interpretation of the facts.  Accordingly,
2 petitioner is precluded from obtaining habeas relief by  28 U.S.C. § 2254(d).
3 　　　　Furthermore, the court cannot find that failure to give the momentary or transitory
4 possession instruction had any influence on the jury's decision to find petitioner guilty given the
5 completely implausible nature of plaintiff's explanation as to why he had temporary possession
6 of a firearm.  Therefore, any error in failing to give the instruction is not an adequate basis upon
7 which to grant habeas relief.
8 　　　　For these reasons, the court will recommend that petitioner's application for writ
9 of habeas corpus be denied.
10 　　　　IT IS HEREBY RECOMMENDED that:
11 　　　　1. Petitioner's application for a writ of habeas corpus is denied; and
12 　　　　2. This case be closed.
13 　　　　These findings and recommendations are submitted to the United States District
14 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-
15 one days after being served with these findings and recommendations, any party may file written
16 objections with the court and serve a copy on all parties.  Such a document should be captioned
17 "Objections to Magistrate Judge's Findings and Recommendations."  In his objections petitioner
18 may address whether a certificate of appealability should issue in the event he files an appeal of
19 the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district
20 court must issue or deny a certificate of appealability when it enters a final order adverse to the
21 applicant).  Any reply to the objections shall be served and filed within fourteen days after
22 service of the objections.  The parties are advised that failure to file objections within the
23 /////
24 /////
25 /////
26 /////

1  specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951
2  F.2d 1153 (9th Cir. 1991).
3   Dated: April 24, 2012

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

---

[1] ferg3430.157